721 So.2d 723 (1998)
W.T.J. adoptive father of K.A.R. a minor, Petitioner,
v.
E.W.R., natural father of K.A.R., a minor, Respondent.
No. 92161.
Supreme Court of Florida.
December 3, 1998.
Tann H. Hunt, Tallahsssee, for Petitioner.
George Drumming, Jr., Tallahassee, for Respondent.
WELLS, Justice.
We have for review a decision of the First District Court of Appeal on a question the court certified to be of great public importance:
WHETHER THE CASE OF IN INTEREST OF B.W., 498 So.2d 946 (Fla.1986), PRECLUDES A FINDING OF ABANDONMENT WHERE THE NATURAL FATHER VOLUNTARILY COMMITS A CRIME PRIOR TO THE BIRTH OF HIS CHILD WHICH REASONABLY COULD BE EXPECTED TO RESULT IN IMPRISONMENT DURING THE ENTIRE OR A SUBSTANTIAL PORTION OF THE TIME THAT THE CHILD WILL BE A MINOR.
E.W.R. v. W.T.J., 702 So.2d 1343, 1345 (Fla. 1st DCA 1997). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative and hold that the commission of a violent criminal offense by the natural father during the mother's pregnancy and a resultant prison sentence which will confine the natural father for a substantial period of the child's minority are factors which may support a finding of abandonment under chapter 63, Florida Statutes (1995).
Petitioner, W.T.J., seeks review of a district court decision which reverses a final judgment of adoption on the basis that the natural father's parental rights were erroneously terminated. The district court set forth the relevant facts in its opinion below.
The appellant, E.W.R., had been married to K.A.R.'s mother for approximately three months when she became pregnant. In August 1991, when K.A.R.'s mother was 4½ months pregnant, she learned that E.W.R. had been arrested for kidnapping and rape. The appellant was convicted of three separate sexual batteries and sentenced *724 as a habitual sex offender in February 1992. Since his incarceration in August 1991, the appellant has provided no financial support for the child. On June 30, 1992, K.A.R.'s mother filed for a divorce which was granted in September 1992. In October 1992, she married appellee, W.T.J.
On March 25, 1996, W.T.J. filed a petition to adopt the child who was then about four years old and had been living with him and the natural mother since infancy. The mother consented to the adoption on March 25, 1996, and on March 26, 1996, she petitioned the court for termination of parental rights of the natural father. The petition for termination sought relief based on the following allegations:
11. The birth father is a man of at least average intelligence who made certain choices with obvious probable consequences.
12. The choices that this birth father made were kidnapping, sexual battery and aggravated assault. The consequence that followed his choices was a jail sentence of twenty (20) years. Actual time expected to be served is eleven (11) years.
13. The birth father committed these crimes after finding out that the Petitioner was pregnant with their child. Therefore, he chose to abandon his child. The Petitioner and the minor child were given no financial and emotional support because of the birth father's conduct before the birth of the minor child. If possible, the Petitioner and the minor child received less than no support. They suffered deficient support because the natural father deliberately took away their well-being by his choices.
14. "A finding of abandonment under Chapter 63 means, for whatever reason, the parent or parents have not provided the child with emotional and financial sustenance and, consequently, the well-being of the child requires severing the parent's legal custody or relationship with the child." In re Adoption of Doe, 543 So.2d 741, 744 (Fla.1989).
Evidence adduced at the final hearing established that appellant kidnapped a woman and committed sexual battery for which he was subsequently sentenced to 20 years. During his incarceration, appellant has not provided financial support; however, he testified that he has no resources, and appellee presented no evidence to refute these allegations. Appellant's presumptive release date is not until 2008 when the child will be 17 years old.
Id. at 1343-44. After the hearing, the trial court granted the mother's petition to terminate the natural father's parental rights, finding that the natural father had "abandoned the child before his incarceration because he was then arrested during the pregnancy of the mother for kidnaping and rape." The court subsequently entered a final judgment of adoption in favor of W.T.J.
The district court framed the issue on appeal as "whether the trial court erred in finding that appellant's conduct constituted abandonment of his minor child within the meaning of section 63.032, Florida Statutes (1995)." 702 So.2d at 1343. After analyzing our decision in B.W., the court concluded that B.W. was indistinguishable from the instant case and that it required reversing the trial court order terminating the natural father's parental rights. This conclusion required the court to reverse the final judgment of adoption. The district court, discontented with what it viewed as the state of the law, suggested that we revisit the issue and certified the aforementioned question. We quash the district court's decision.
Chapter 63, Florida Statutes, governs adoptions in Florida. Adoption is the act of creating a legal relationship between parent and child where that relationship did not exist, thereby declaring the child to be legally the child of the adoptive parent. See § 63.032(10), Fla. Stat. (1995). A court may grant a petition for the adoption of a child born in lawful wedlock only after both natural parents have consented. See id. § 63.062. In certain instances, however, a court may excuse the required consent of a natural parent. See id. § 63.072. One such instance is when a natural parent abandons his or her child. See id. § 63.072(1). The issue in this *725 review is whether the commission of a violent criminal offense during the mother's pregnancy by the natural father which is likely to result in a lengthy term of imprisonment is conduct which may support a finding of abandonment.[1]
Statutory and case law allows a court to consider a natural father's prebirth conduct when making a determination of abandonment in an adoption proceeding. See id. § 63.032(14); In re Baby E.A.W., 658 So.2d 961 (Fla.1995); In re Adoption of Doe, 543 So.2d 741, 747 (Fla.1989). Section 63.032(14), Florida Statutes (1995), which defines abandonment, authorizes a trial court making an abandonment determination to take into account the "conduct of a father towards the child's mother during her pregnancy." In Baby E.A.W., we interpreted this provision and held that the term "conduct" was broad enough to allow a trial court to consider a lack of emotional support and/or emotional abuse towards the child's mother during her pregnancy in determining abandonment. Id. at 966. Applying this precedent to this case, we hold that the commission of a violent criminal offense during the mother's pregnancy by the natural father and a resultant prison sentence which will confine the natural father for a substantial period of the child's minority are factors which may support a finding of abandonment under chapter 63, Florida Statutes.
In response to the certified question, we find that B.W. is not an impediment to our holding. B.W., a case which predates section 63.032(14), Florida Statutes (1995), and our opinions in Doe and E.A.W., involved the question of whether incarceration, by itself, could support a finding of abandonment. We held that incarceration does not, as a matter of law, constitute abandonment. B.W., 498 So.2d at 948. On the other hand, our decision did not state nor should it be read to mean that incarceration is not a factor to be considered in determining whether abandonment has occurred. Incarceration is a fact which a trial court may consider together with other facts to determine whether clear and convincing evidence of abandonment exists. The facts here reveal that this father kidnapped and sexually battered another woman when the mother of his child was pregnant. The foreseeable consequence of these violent criminal offenses was the lengthy term of incarceration which he received. As a result of his actions, the natural father will be confined for a substantial period of the child's minority. These facts are relevant and sufficiently egregious that they may be considered conduct which supports a finding of abandonment under chapter 63, Florida Statutes, and our decisions in Doe and E.A.W.
In conclusion, we answer the certified question in the negative and quash the district court's decision. We remand this case to the district court for further proceedings consistent with this opinion.
It is so ordered.
HARDING, C.J., and OVERTON, KOGAN, ANSTEAD and PARIENTE, JJ., concur.
SHAW, J., recused.
NOTES
[1] We note that the legislature enacted a law in 1997 which conclusively addresses this issue. Ch. 97-266, Laws of Fla. (codified at section 39.464(1)(d), Florida Statutes (1997)). This substantive provision, which applies only to persons incarcerated or sentenced after October 1, 1997, id. at § 6, has no application here because the respondent was sentenced and incarcerated before October 1, 1997.